UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LECIER DELGADO-NEGRÓN,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. 10-1187 (JAF)

(Crim. No. 08-349)

**OPINION AND ORDER**

Petitioner, Lecier Delgado-Negrón, brings this pro-se petition under 28 U.S.C. § 2255 for relief from sentencing by a federal court, alleging that the sentence was imposed in violation of his constitutional rights. (Docket Nos. 1; 1-2.) The Government opposes (Docket No. 6), and Petitioner replies (Docket No. 9).

**I.**

**Factual and Procedural Summary**

We draw the following narrative from the record of Petitioner's criminal case (Case No. 08-349) and Petitioner's § 2255 motion, the Government's response, and Petitioner's reply (Docket Nos. 1; 3; 4). Petitioner was indicted on three charges relating to his role in smuggling 209 kilograms of cocaine from the Dominican Republic to Puerto Rico. Count one charged Petitioner with conspiracy to import a controlled substance in violation of 21 U.S.C. § 925(a); count two charged Petitioner with attempted importation of a controlled substance in violation of § 952(a); and count three alleged Petitioner's possession with intent to distribute cocaine in violation of § 841(b)(1)(A)(ii)(II).

On September 30, 2008, a U.S. Customs and Border Protection ("CBP") aircraft crew encountered Petitioner's boat, registered in Puerto Rico, in an area of the ocean approximately twenty-three miles off the west coast of Puerto Rico; the boat was one mile away from international waters and moving at ten knots an hour toward Puerto Rico. (Case No. 08-349, Docket No. 29-3.) The CBP aircraft crew noticed that the vessel's engine cowling had been removed and that there was a suspicious object on the deck. (Id.)  Two people were onboard, Petitioner and Marlon Moreno Ruiz-Peguero. (Id.)  The vessel's radio antenna was retracted, and the CBP agents had to make three or four attempts to hail Petitioner on the radio. (Id.) Petitioner, when asked what he was doing in that area and in particularly rough seas, stated that he had departed from Cabo Rojo, Puerto Rico, and was conducting a "sea trial." (Id.)  The boat's location and the roughness of the seas raised suspicion among the CBP aircraft crew. (Id.) They called in a CBP interdiction team to board the vessel. (Case No. 08-349, Docket No. 29-4.) The interdiction team boarded Petitioner's vessel, and Ruiz-Peguero informed them that he was a Dominican national, yet could not produce a CBP Arrival-Departure document to prove he had lawfully entered the United States. (Id.)  CBP agents also noted that both men carried with them passports and changes of clothes. (Id.)  At this time, the interdiction team was informed by the aircraft crew that a search of Petitioner's name had turned up a criminal record. (Id.) The interdiction team then escorted the vessel to Mayagüez, Puerto Rico, where an x-ray scan of the boat was conducted.  This search revealed 209 kilograms of cocaine in a concealed compartment.  Ruiz-Peguero later stated to an Immigrations and Customs Enforcement ("ICE") agent that he and Petitioner had departed from Punta Cana, Dominican Republic, on the day they were intercepted off the coast of Puerto Rico.

Civil No. 10-1187 (JAF) -3-

Petitioner's counsel filed a pretrial motion to suppress the cocaine seized from Petitioner's vessel. (Case No. 08-349, Docket No. 23.) Counsel advanced two arguments in this motion: (1) Petitioner's vessel had never crossed the border into the United States; and (2) CBP agents lacked reasonable suspicion to stop and search the vessel. (Id.) We denied this motion without prejudice to a renewed motion to suppress as part of a later motion under Federal Rule of Criminal Procedure 29. (Case No. 08-349, Docket No. 30.) Petitioner moved for reconsideration of this order. (Case No. 08-349, Docket No. 31.) We denied the motion for reconsideration. (Case No. 08-349, Docket No. 35.)

On March 24, 2009, Petitioner entered into a plea agreement by which he pleaded guilty to count one in return for the Government's dropping counts two and three and recommending the statutory minimum sentence. As part of the agreement, Petitioner expressly waived his right to appeal his sentence. (Case No. 08-349, Docket No. 39.)

One year later, Petitioner timely filed the instant habeas corpus petition. In his motion, Petitioner claims that his decision to accept the plea agreement was tainted by ineffective assistance of counsel. He alleges that counsel failed to inform Petitioner that we were required by Federal Rule of Criminal Procedure 12(d) to state on the record any essential finding of fact in deciding the suppression motion. Petitioner also claims that counsel provided ineffective assistance by failing to "properly pursue [the] suppression motion filed." (Docket No. 9 at 4.)

## II.
### Standard for Relief Under 28 U.S.C. § 2255

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court. See 28 U.S.C. § 2255. A federal prisoner

may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States." Id.

The petitioner is entitled to an evidentiary hearing unless the "allegations, even if true, do not entitle him to relief, or . . . the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting David v. United States, 134 F.3d 470, 477 (1st Cir. 1998)) (internal quotation marks omitted); see also § 2255(b).

### III.
### Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro-se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

The success of a claim of ineffective assistance of counsel under § 2255 depends on a petitioner's showing both a deficient performance by his trial counsel and a resulting prejudice. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). Deficient performance is present where the trial counsel's representation "fell below an objective standard of reasonableness," a standard that is informed by "prevailing professional norms." Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). To succeed on a claim of ineffective assistance of counsel, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Strickland, 466 U.S. at 694. When claiming ineffective assistance of counsel in accepting a plea offer, a petitioner's defense is not prejudiced unless he can show a reasonable probability that, were it not for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### A.      Ineffective Assistance in Counseling to Plead Guilty

Petitioner claims that counsel did not inform him that the Federal Rules of Criminal Procedure require that essential findings of essential fact be made on the record when a suppression motion is denied. See Fed. R. Crim. P. 12(d). Even assuming that counsel did not inform Petitioner of the requirements of Rule 12(d) and that this qualified as deficient performance, we find that Petitioner has failed to demonstrate a resulting prejudice.

If Petitioner had gone to trial and appealed the violation of Rule 12(d), the remedy would be a remand to state our factual findings, from which the court of appeals could then review our decision to deny the motion. See, e.g., United States v. Wright, 625 F.3d 583, 604 (9th Cir. 2010) (ordering a remand for factual findings, where it was "impossible to determine the basis for the district court's denial of a motion to suppress"). Thus, the question of whether there was a reasonable probability that Petitioner would have forgone a plea in favor of trial turns on the strength of Petitioner's two arguments for suppression: (1) a border search was not justified because no border crossing had been made; and (2) CBP agents did not otherwise have reasonable suspicion to stop and search Petitioner's vessel.

Because we find that there was reasonable suspicion for stopping Petitioner's vessel and probable cause to search it, there is no need to address Petitioner's first argument concerning

Civil No. 10-1187 (JAF)                                                                                           -6-

whether the search of his vessel was a proper border search.[1] We turn first to whether the initial investigatory stop was reasonable within the bounds of the Fourth Amendment. The law is unclear as to whether the unique legal nature of the area of the sea where Petitioner's boat was initially detained, the "contiguous zone,"[2] and the CBP's regulatory grant of authority[3] result in a lowered threshold for the analysis of an investigative stop's reasonableness under the Fourth Amendment. Regardless, the initial stop in this case meets the reasonable-suspicion standard that would apply to investigative stops occurring within U.S. borders.

---

[1] The Government may conduct routine searches of all persons, and their belongings, at our national borders; such searches and seizures are per se reasonable under the Fourth Amendment, requiring neither a warrant, probable cause, nor reasonable suspicion. See United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985). The Government argued that, because Petitioner was found by CBP agents twenty-three miles from the coast in the "contiguous zone," this search was a border search. Such a theory depends on the "contiguous zone" being considered the "functional equivalent of the border"—a proposition that has not been ruled on by the First Circuit and has been upheld by the Eleventh Circuit only. See United States v. Hidalgo-Gato, 703 F.2d 1267 (11th Cir. 1983) (holding that searches of vessels in the contiguous zone will be treated as border searches for purposes of Fourth Amendment analysis). Hidalgo-Gato was decided before the issuance of executive orders extending the territorial seas to twelve miles and the contiguous zone to twenty-four miles from the coast. Thus, its continuing relevance is unclear.

[2] Petitioner was stopped by CBP agents in an area twenty-three miles west of Puerto Rico's shores, an area known in international law as the "contiguous zone." While the territorial seas—the physical border—of the United States extend twelve miles past its shores, the "contiguous zone" extends an additional twelve miles beyond the border. See Presidential Proclamation No. 7219, 64 Fed. Reg. 48701 (Aug. 2, 1999) (extending the contiguous zone to the maximum extent allowed by treaty, twenty-four nautical miles from shore). By international treaty, the United States may exercise a degree of control of the contiguous zone necessary to "prevent infringement of its customs, fiscal, immigration or sanitary laws and regulations within its territory or territorial sea." Id.; see also Convention on the Law of the Seas, art. 33, Dec. 10, 1982, S. Treaty Doc. No. 103-39, 1833 U.N.T.S. 3. The United States has signed the Convention on the Law of the Seas, but the Senate has not yet ratified it.

[3] A long-standing regulation grants CBP agents the authority to board any U.S. vessel on the high seas or any vessel in the Customs waters of the United States "for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vessel." 19 C.F.R. § 162.3(a).

Civil No. 10-1187 (JAF)                                                                                               -7-

In order to conduct a brief investigatory stop of an individual, law enforcement agents must have a "reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). Courts look to a totality of the circumstances to determine whether agents had a "particularized and objective basis" to suspect a crime had taken place. Id.

Petitioner's location one mile from international waters, in rough seas, far from his stated point of origin, for the alleged purpose of conducting a sea trial, and with a retracted radio antenna suffices to raise a reasonable suspicion that some criminal activity was afoot. Once CBP agents stopped and boarded the vessel, additional factors provided probable cause for search. The facts that Ruiz-Peguero was a Dominican national who could not produce documentation of his lawful entry into this country, that Petitioner and Ruiz-Peguero did not seem to know each other well, and that both had changes of clothes and passports yet were only conducting a sea trial, all together, justified escorting the vessel to port for a more extensive search.

The above reasons justified the denial of Petitioner's suppression motion. The admission into evidence of the 209 kilograms of cocaine found on his boat would have made Petitioner highly likely to face conviction on all charges. We find no reasonable probability that Petitioner would have exposed himself to this risk at trial solely to appeal our lack of explicit fact-finding on a meritless suppression motion.

**B.     Ineffective Assistance in Failing to Pursue Suppression Motion**

An unconditional guilty plea is generally considered a waiver of non-jurisdictional defects occurring prior to the plea. United States v. Cordero, 42 F.3d 697, 698–99 (1st Cir.

1994) (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  The First Circuit has not addressed whether a defendant's guilty plea waives a future collateral challenge based on ineffective assistance of counsel unrelated to the decision to plead guilty.  The Ninth Circuit has ruled that Tollett bars consideration in collateral proceedings of pre-plea ineffective assistance of counsel claims.  See Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994).

Even if Petitioner's claim is not barred by Tollett, it is clearly meritless.  Counsel did not "fail[] to litigate the suppression motion." (Docket No. 9 at 4.)  He filed the initial motion and followed our denial with a motion to reconsider.  As an interlocutory appeal of a ruling on suppression is available only to the Government, see 18 U.S.C. § 3731, Petitioner's counsel had exhausted all pretrial means of suppressing the fruits of the CBP search of Petitioner's vessel.  Therefore, counsel's performance was not deficient.

## IV.

### Certificate of Appealability

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA").  We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  We see no way in which a reasonable jurist could find our assessment of Petitioner's constitutional claims debatable or wrong.  Petitioner may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

V.

**Conclusion**

For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 1). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief from this court.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 24th day of March, 2011.

                  s/José Antonio Fusté
                  JOSE ANTONIO FUSTE
                  Chief U.S. District Judge